

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–144

| | |
|---|---|
| ANYA BROWN<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES<br><br>APPELLEE | **Opinion Delivered** September 23, 2015<br><br>APPEAL FROM THE PHILLIPS<br>COUNTY CIRCUIT COURT<br>[NO. 54JV-2011-143]<br><br>HONORABLE ANN HUDSON,<br>JUDGE<br><br>AFFIRMED; MOTION TO<br>WITHDRAW GRANTED |

**CLIFF HOOFMAN, Judge**

Appellant Anya Brown appeals from the order of the Phillips County Circuit Court terminating her parental rights to three of her children, E.H., A.H., and N.H. Brown's attorney has filed a no-merit brief and a motion to withdraw as counsel pursuant to Rule 6–9(i) of the Rules of the Arkansas Supreme Court and Court of Appeals and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). The clerk of this court mailed a certified copy of counsel's motion and brief to Brown's last known address informing her of her right to file pro se points for reversal; however, she has not done so. We grant counsel's motion to withdraw and affirm the order of termination.

On October 7, 2011, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody of J.H. (DOB 10/2/98), E.H. (DOB 1/27/05), A.H. (DOB 8/31/06), and N.H. (DOB 12/31/08). In the affidavit attached to the petition, DHS indicated

that it had exercised a seventy-two-hour hold on the children on October 4, 2011, after receiving a report of environmental neglect, inadequate shelter, and failure to protect. The affidavit stated that Brown's home had no running water, feces in the toilet and in a bucket, and a sewage blockage in the sink. In addition, the affidavit asserted that J.H. had made a report of sexual abuse by her stepfather and that the two school-aged children, J.H. and E.H., had not been enrolled in school since moving to Arkansas in July 2011.

The circuit court granted DHS's petition for emergency custody on October 11, 2011, and probable cause for the removal was found on October 13, 2011. The children were adjudicated dependent-neglected on January 11, 2012, due to improper supervision, environmental neglect, and abandonment. Brown was instructed to complete parenting classes and a psychological evaluation, attend counseling, and obtain an adequate and stable home. Supervised visitation was ordered, and the goal of the case was set as reunification, with a concurrent goal of relative placement.

At the review hearing held in June 2012, the circuit court found that Brown had moved to Tennessee since the date of the last hearing but had recently returned and started following the case plan. By the time of the permanency-planning hearing in September 2012, Brown was in partial compliance with the case plan and court orders and was making significant progress, according to her caseworker. Thus, the circuit court continued the goal of reunification with Brown, finding that the children and Brown had a strong bond, that Brown had left her husband who had sexually abused J.H., and that reunification was likely within three months as long as Brown participated in additional individual and family counseling.

SLIP OPINION

The next review hearing was held in January 2013, at which time Brown was living in a battered women's shelter in Shreveport, Louisiana. Given Brown's testimony that she planned to pursue services in Louisiana, including counseling, employment, and housing, the court found that she would be given additional time to comply with the case plan. Subsequent to this hearing, however, Brown moved to California. DHS filed a motion to terminate reunification services in June 2013, alleging that the children had been subjected to aggravated circumstances in that there was little likelihood that additional services to the family would result in successful reunification. The motion further alleged that Brown had willfully refused to obtain and maintain stable housing; that she had moved four different times since the inception of the case; that she had failed to keep DHS apprised of her whereabouts; and that she had not exercised visitation on a regular basis.

In September 2013, a combination permanency-planning hearing and hearing on the motion to terminate reunification services was held. The circuit court found that DHS had proved by clear and convincing evidence that the juveniles had been subjected to aggravated circumstances based on the fact that there was little likelihood that further services to the family would result in reunification. The evidence presented at the hearing showed that Brown had not had consistent visitation with the children because she had moved multiple times throughout the case, and she still had not obtained stable and appropriate housing. A referral was made for a home study of Brown's residence in California, but it was not completed because Brown failed to provide all of the required information. The court therefore found that reunification services would be terminated and that the goal of the case would be changed



to termination and adoption.

DHS filed a petition for termination of Brown's parental rights as to E.H., A.H., and N.H. on April 9, 2014.[1] DHS alleged multiple grounds for termination pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2013): (1) that the juveniles had been adjudicated by the court to be dependent-neglected and had continued out of the home for twelve months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions had not been remedied by the parent; (2) that the juveniles had lived outside of the home of the parent for a period of twelve months and the parent had willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juveniles; (3) that the parent had abandoned the juveniles; (4) that the parent subjected the juveniles to aggravated circumstances based on a determination by a judge that there is little likelihood that services to the family will result in successful reunification; and (5) that other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that return of the juveniles to the custody of the parent is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juveniles to the custody of the parent. DHS further alleged that termination was in the best interest of the children.

---

[1] DHS did not pursue termination of Brown's parental rights with respect to sixteen-year-old J.H., whose case remained open following the termination order at issue in this appeal.

SLIP OPINION

The termination hearing was held on August 27, 2014. Daphne Rayford, who was the caseworker for the family until April 2014, testified that she had provided services to Brown including transportation, supervised visitation, parenting classes, housing assistance, and referrals for counseling and a psychological evaluation. Rayford stated that Brown had completed parenting classes and the psychological evaluation but had not completed her counseling sessions. In addition, Brown had failed to maintain stable housing for the majority of the case, with the exception of a few months in 2012. Her visits with the children were also sporadic due to her numerous relocations.

Rayford testified that Brown lived in West Helena at the time the children were removed in October 2011 but that her whereabouts were unknown between November 2011 and March 2012. In March 2012, Brown contacted Rayford and informed her that she was at a women's shelter in Murfreesboro, Tennessee. In June 2012, Brown moved to a shelter in Helena, and in July 2012, Brown relocated to Louisiana for several weeks. Brown then returned to the shelter in Helena and eventually obtained a one-bedroom apartment in September 2012. DHS began visitation at Brown's residence at that time but then suspended home visits in October 2012 because of a report that Brown's husband had been there. In November 2012, Brown moved out of her apartment, and in January 2013, she informed Rayford that she was back in Louisiana at another shelter. The next time that Rayford heard from Brown was in April 2013, after Brown had moved to California. Brown notified Rayford that she had obtained an apartment in California in May 2013, and a referral was made for a home study. However, Rayford testified that Brown would not comply with the

5

requirement to be fingerprinted and that the home study was therefore denied. Reunification services were terminated in September 2012, and Rayford indicated that it had been approximately two years since Brown last visited the children. Rayford testified that the children had been out of the home for three years and that if Brown had availed herself of the services offered to her, her children would have been returned by now. According to Rayford, Brown had never achieved stability throughout the case, and it would not be safe to subject the children to that sort of instability.

Sharon Willis, the current caseworker for the family, testified that E.H., A.H., and N.H. were currently placed together in a foster home and that the foster parents were interested in adopting them. Willis stated that, to her knowledge, Brown had not sought or received services in California. Willis indicated that Brown had returned to a shelter in Arkansas within the last month but had not visited with the children. According to Willis, there was little likelihood of reunification, as Brown had not been able to achieve stability in three years. While Brown had recently moved back to Arkansas, Willis stated that it would take her at least another year to demonstrate that she could maintain a stable residence. Thus, Willis testified that it was in the children's best interest for Brown's parental rights to be terminated.

Evelyn Chambers, the Phillips County supervisor for DHS, testified that she was recommending termination of Brown's parental rights based on Brown's failure to maintain consistent, measurable progress. Chambers described Brown's lifestyle as "nomadic" and indicated that she had never had a stable and appropriate home to which the children could be returned. According to Chambers, it was not in the children's best interest "to be drug

from state to state," and they were in need of permanency and stability. Chambers testified that the children, who currently ranged in age from five to nine years old, were intelligent and had no issues that would prevent them from being adopted. She indicated that there was a high likelihood that they would be adopted and that every attempt would be made to keep them together.

Brown testified that she was currently staying at a shelter in Forrest City but that she would be moving into a new residence in September that would be appropriate for the children. She further stated that she had filed for a divorce from her husband. Brown explained that she had initially left Arkansas due to domestic violence, but she indicated that she was no longer concerned about this issue because her husband and his family were not aware that she was living in Forrest City. Brown testified that she had complied with everything in the case plan except for stable housing, which she claimed she would now have. She also claimed that she had been attending therapy sessions in California with a licensed counselor, although she had no proof of her attendance. She admitted that she had not seen the children since September 2013; however, she stated that it was not in her children's best interest for her parental rights to be terminated because she loved them, she was a "new person," and she deserved more time to demonstrate stability.

Following the hearing, the circuit court entered an order on November 26, 2014, finding that there was clear and convincing evidence to support termination of Brown's parental rights and that termination was in the children's best interest. Brown filed a timely

notice of appeal from the circuit court's decision.[2] Her counsel has filed a no-merit brief, in which she contends that there are no meritorious issues for appeal.

The primary adverse ruling discussed by counsel is the circuit court's decision to terminate Brown's parental rights. A trial court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2013); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is defined as that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established. *Dinkins*, *supra*. On appeal, the appellate court will not reverse the trial court's ruling unless its findings are clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the trial court to judge the credibility of the witnesses. *Id*.

Pursuant to Ark. Code Ann. § 9-27-341(b)(3), an order terminating parental rights shall be based upon a finding by clear and convincing evidence that it is in the best interest of the juvenile, including consideration of the likelihood of adoption and the potential harm, specifically addressing the effect on the health and safety of the child caused by continuing contact with the parent. The order terminating parental rights must also be based on a

---

[2] The circuit court also terminated the parental rights of the putative fathers to E.H., A.H., and N.H. in this order; however, they are not parties to this appeal.

SLIP OPINION

showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9–27–341(b)(3)(B).

While DHS alleged multiple grounds for termination with regard to Brown, the circuit court discussed only two of those grounds in its termination order. Only one ground must be proved to support termination, *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008), and in her no-merit brief, counsel focuses on the ground found in Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)(*a*), which states as follows:

> That a juvenile has been adjudicated by the court to be dependent–neglected and has continued out of the home for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the home and correct the conditions which caused removal, those conditions have not been remedied by the parent.

The children were initially removed from Brown's custody in October 2011 for environmental neglect and failure to protect. Brown was ordered to obtain and maintain stable housing that was appropriate for the children and complete counseling, parenting classes, and a psychological evaluation. While she completed the psychological evaluation and parenting classes, Brown failed to maintain stable housing for more than a month or two throughout the three years that the children remained in DHS custody. In fact, in that three-year period, Brown moved at least seven times, and she failed to keep in contact with DHS for months at a time. She also failed to complete her counseling sessions, primarily because of her numerous out–of–state relocations. While Brown claimed to have attended counseling in California, she provided no proof of this at the hearing, and the circuit court did not find her credible. The circuit court noted that Brown had initially left the state due to domestic abuse by her husband; however, the court found that Brown did not take advantage of counseling to address

the domestic-violence issue despite having three years to do so. Even at the time of the termination hearing, Brown was living in a shelter and had not obtained stable housing to which her children could be returned. We therefore agree with counsel that there could be no meritorious argument made with respect the statutory grounds for termination.

There was also clear and convincing evidence to support the circuit court's finding that it was in the children's best interest for termination to occur. The court found that they were clearly adoptable based on the testimony of both Willis and Chambers. With regard to potential harm, the court found that Brown's partial compliance did not rise to the level of meeting her children's needs, that her children were not her first priority, that she would continue in the same pattern as she had in the past if she were given more time to pursue reunification, and that she was incapable of providing the stability and permanency that the children needed. As counsel asserts, a stable home is one of a child's most basic needs. *Lantham v. Ark. Dep't of Human Servs.*, 99 Ark. App. 25, 256 S.W.3d 543 (2007). Thus, based on the evidence presented in this case, there would also be no merit to an appeal challenging the circuit court's finding on best interest.

The remaining adverse rulings discussed by counsel are evidentiary rulings that occurred during the termination hearing, none of which provide a meritorious ground for appeal. Accordingly, based on our review of the record and the brief submitted, we conclude that counsel has complied with Ark. Sup. Ct. R. 6-9(i) and agree that the appeal is without merit. Therefore, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.



GLADWIN, C.J., and WHITEAKER, J., agree.

*Dusti Standridge*, for appellant.

No response.